May it please the Court, Jativ Sekho on behalf of the petitioner Tsering Somo. This case involves a Tibetan asylum claim. The grounds for the IJ's denial of asylum to Ms. Somo was the IJ's determination that Ms. Somo failed to establish that she is Tibetan. The Tibetan is based on the IJ's failure to grasp an elementary precept here, underlying the entire case, that Tibetans are stateless. As a result of the IJ failing to understand that Tibetans constitute a stateless people, she entangled herself in weighing two inauthentic documents. A Chinese identification document that was inauthentic and a fraudulently obtained Nepali passport. Two inauthentic documents prove nothing. The only thing in fact that the Nepali passport proved is that the manner in which Ms. Somo fled from Tibet was consistent with the mode and manner that Tibetans flee persecution. The misfocus on the vacuous and weightless documents was at the expense of discounting credible evidence, independent corroboration that the IJ could advance no sustainable reason for discounting. This independent corroboration was credible and overwhelming. The first piece of this evidence is that Ms. Somo was speaking Tibetan at her hearing. The IJ conceded that she had no basis other than to reach the conclusion that she's Tibetan based on the fact that Ms. Somo was speaking Tibetan. Well, counsel, what troubles me here is that the documents, and this is a very interesting case, the documents seem to establish that yes, indeed, she was Tibetan. But it's, we have a finding by the IJ that this woman lied and there is a considerable amount of evidence to support that on certain aspects. How do we sort all of that out? I'm trying to do that, Your Honor. And yes, I will immediately concede here, Your Honor, that if Ms. Somo didn't have this corroboration, her claim would be in very, very serious trouble because she can't rely on her testimony here because in her testimony, she did make a misrepresentation to the Chinese identification document that she herself presented. And I will also concede before the court that I think her recantation wasn't timely to rehabilitate her testimony standing alone. But having said that, Your Honor, our asylum laws require us to not stop analyzing the case at the moment we have someone who may have made a misrepresentation. There may be a lot of reasons why asylum applicants may do that. It may sometimes be an act of desperation. So that requires that we look at the corroboration. And this circuit, as well as other circuits, have pulled out the misrepresentation and see if there's untainted independent corroboration. And here the untainted independent corroboration was overwhelming. I think that the IJ was so bothered by the misrepresentation that her judgment was clouded and that she didn't give the independent corroboration an appropriate way, even though her testimony did not have any impact on the independent corroboration. The independent corroboration standing alone was enough to establish that she is Tibetan. Well, does being a Tibetan automatically give you a pass to political asylum? Absolutely not, Your Honor. Being Tibetan and standing alone... Because there's quite a bit of evidence that she is Tibetan. But there's also evidence that she can't be believed under oath. What do you do with that? Yes, Your Honor. I think the problem with the case with respect to her past experiences is that the IJ didn't delve into her past experiences in Tibet at all. She spent ten minutes on that issue because all the entire hearing was totally consumed by the issue of the document, of the Chinese identification document. So as a result, the IJ didn't delve into her experiences. Now, if we were to look at the record, we're fortunate enough that we do have an assessment of Ms. Somo's credibility with respect to her experiences in Tibet, because there was an expert witness who testified that he interviewed Ms. Somo six hours about her past experiences. And that supplements the record where the record is void. We don't have any inconsistencies, discrepancies with respect to Ms. Somo's account of what happened. And I may also add here, once Ms. Somo established that she's Tibetan, her actions, her activities in the United States, the fact that she's been politically active in the United States, that in itself would also establish that she has a well-founded fear of persecution in Tibet because the country conditions, in this case, Your Honors, is so extreme with respect to Tibet. And I would like to address the Nepali passport for a moment. The judge was asking about the Nepali passport here, but there is zero evidence that this Nepali passport is genuine. The evidence is that the Nepali passport was used in a manner that did not allow Ms. Somo to leave from Kathmandu, Nepal. The evidence is that there's nothing in this passport with respect to name or anything else or biographic data in this passport that suggests that it belongs, that it's a genuine passport belonging to Ms. Somo. The IJ herself didn't believe that the passport was genuine when she said that she denied her voluntary that she would be forced to deny her voluntary departure because there's no authentic Nepali passport. And then, in this case, the government was provided an opportunity for Ms. Somo to see if the Nepali passport was authentic. They were given the Nepali passport to conduct forensics examination on it, and they never produced evidence that the Nepali passport was genuine. The only evidence in the case is that the Nepali passport is fraudulently obtained. There is zero evidence to say it's genuine. So on one hand, we have a mountain of independent corroboration establishing that Ms. Somo is Tibetan, is who she says she is. And on the other hand, we have zero evidence that she's anything but Tibetan. Is there evidence of persecution in Tibet in this case? There's overwhelming evidence. In her execution. In her persecution. As Judge Goodwin asked you, being Tibetan is not, in and of itself, enough to command asylum. Yes, Your Honor. She's not making a claim on past persecution. She's making a claim on a well-founded fear of future persecution. And with respect to that, we have two pieces of evidence that establish that she does have a well-founded fear of persecution. The first piece, Your Honors, is the expert assessment of her testimony with respect to her experiences in Tibet. Her account of those experiences. Again, the IJ didn't examine Ms. Somo with respect to her experiences. The expert did. And the IJ found her assessment of Ms. Somo's testimony credible. And she did state that the reason her and her family fled Tibet was because they were supporting the Dalai Lama and that the government was on the verge of finding out that they were supporters of the Dalai Lama. Then in the United States, Ms. Somo has been a Tibetan activist. So on either basis, she would have a well-founded fear of future persecution. Because her activism in Tibet is something – I mean, her activism in the United States is something that this Court assumes will continue. We don't force people to divorce themselves from their political views upon return. So if she was to return and to continue with her activism, then as a result, she would surely have more likely than not fear of persecution if she was returned to continue her activities. And finally, Your Honor, I would like to add one more thing. The IJ here also then for some reason designated Nepal – sorry, China as an alternative country of return here. That was a big mistake. Because if – the only instance where Ms. Somo would have to return to China is if the IJ was incorrect with respect to whether or not she's Tibetan. And the IJ's ground for denying her – for saying that she doesn't have a well-founded fear of persecution or more likely than not fear of persecution would be erased. At that point, the IJ should have withheld her removal to Tibet – to China. Thank you very much, Your Honor. Thank you, Counselor. Your time has expired. We'll now hear from the government. Good morning, Your Honors. May it please the Court, my name is Melissa Nyman-Kelting and I represent the Attorney General. There are two issues here before the Court – credibility and the merits. And I'd like to start with the merits first because I want to make clear the government's position in this respect. There's been a lot of discussion from the Petitioner's Council about whether the record supports the finding of a well-founded fear of future persecution based on independent corroboration, the country background, and the expert's testimony. The expert who, in fact, is an expert in psychological and traumatic trauma assessments, not in Tibet. The government's position is that there is no finding on the merits in this case because Petitioner was not credible before the immigration judge. So if we were to determine that the adverse credibility finding should be set exactly right under the Supreme Court's recent decision and this Court's own decision in Chen, we would need to send the case back to the agency for a finding of whether the Petitioner's application for asylum on the merits, assuming credibility, reaches the standards set forth in statute and in case law. So that being the case on the merits, the Court should not reach that issue here today. What about credibility? The credibility here, Your Honor, is we have an applicant who submitted a fraudulent document. Setting aside the passport, this Court's case law is clear that a fraudulent passport used as a means to get into the country is not a basis for an adverse credibility determination. And the Akinmande, A-K-I-N-M-A-D-E, case supports that proposition. Well, maybe the question ought to be, what is the issue before this Court at this point? If the issue that the I.J. decided was whether or not she was Tibetan and reached the conclusion that he could not believe her that she was Tibetan, therefore she was not, what do you do with all of the corroborating evidence which make it pretty overwhelming that she is indeed Tibetan? There is independent record evidence, Your Honor, that was submitted on her behalf attesting to the fact that she is Tibetan. But here we have to back up and look at what the immigration judge actually said in her decision. She said that she had concerns about the petitioner's true nationality. Well, just to interrupt you for a second, if you don't mind, what the I.J. said was it was not possible for the Court to make a conclusion about her nationality. I'm sorry, the immigration judge said it was not possible or it was not impossible? No, it said that while the consequences for the respondent of this decision may be extreme if she is in fact Tibetan, the Court does not know what else it can do because it has not been possible for the Court to make a conclusion about her nationality based on what goes on. The documents, exactly, and the testimony. Critical issue? Well, she's Tibetan, then her story falls together pretty well. She's entitled to a pardon for her merits because she at least has a prima facie case of a well-founded fear based on her sale of articles, prohibited articles, in Tibet. If she's not, then she's not entitled to relief. But the Court didn't really determine whether she was or not, just that I can't make that determination. Exactly. The immigration judge in this case said that she couldn't determine whether in fact the petitioner was Tibetan. And earlier in the decision, as an aside, she does mention even assuming she was Tibetan, the fact that she submitted fraudulent documents and has lied under oath would still bring her credibility into question, even assuming she was Tibetan. But as we've discussed, there was no finding on the merits here. So it does come down to whether the immigration judge's determination that the petitioner is in fact not Tibetan or that she's not. But basically she said, I'm not sure what to believe. And she bent over backwards in this case to give the petitioner due process. Not only did the petitioner apply before an asylum officer, her application was referred to the immigration judge. Now, as is plain from the record, she had not timely filed her application. Right. And the IJ excused that. And the IJ excused that, saying, I want to make sure that anybody who maybe has a credible claim of persecution has an opportunity. So she gave the petitioner an opportunity to read the immigration judge's decision. I think it's clear that she was struggling and that she was having a hard time with It's pretty equivocal. But it seems to me that the key factual determination wasn't made in this case, what her nationality was. I don't see any support really in the record that she's Nepalese. Well, the problem here, Your Honor, is the immigration judge said that she did not know what to believe. And in that case, a reasonable fact finder could determine that she wasn't Tibetan. And this Court's role is not to determine whether the IJ should have found that she was Tibetan, just to review whether a reasonable fact finder could determine that she was not. Using that standard, though, what evidence is there in the record, aside from the fraudulent card, that she's Nepalese? She spoke Tibetan at the hearing. Correct. All the corroborating evidence said she was Tibetan. What do we have to show? I mean, if the IJ had concluded she was Nepalese, which the IJ did not, I think that could not be supported. I don't see much in the record here that supports the determination. I think Your Honor's correct that the IJ did not make a finding that the petitioner is in fact Nepalese. Her finding is that she could not find that the petitioner is in fact Let me approach it from a slightly different slant. If this were a de novo review, I would be strongly inclined to the view that the record established that she is indeed Tibetan with all of the corroborating evidence that's in this record. But as you know, that is not the standard of review before us. How do we approach this? Because this is a very unusual case for me, because I'm surprised, in fact, I don't quite understand why the IJ could not have reached a determination. She kind of threw up her hands. What do you do when the IJ kind of throws up her hands like that? Well, as Your Honor points out, in this case, the standard of review, it is petitioner's compelling finding. And in this case, as you know But here, Your Honor, we have to come back to the point that we do have a petitioner who lied under oath, who submitted a fraudulent document, and as petitioner's counsel conceded, she did not recant this lie and false testimony until it was presented to her by government counsel that she was caught in it. But there's no finding at the end. I guess where I was headed with this is that it was just a logical thing to do, to remand, to have the IJ make an actual finding as to nationality, because what are we reviewing? We're reviewing a determination that the IJ can't make a determination? It seems to me we need to, I mean, in the way that this case has unfolded, that perhaps the best solution would be to remand for a specific finding on nationality. I mean, at some point you've got to make a finding that's subject to appellate review, and you can't just say, I'm not going to make a finding, and therefore I'm denying relief. But here, Your Honor, the finding is that she's not credible. And as this Court has held, an applicant who has been deemed unbelievable as to one material fact may then be disbelieved in all other aspects of her claim. And so I would submit that we do have a reviewable finding here that the Petitioner did not submit credible evidence supporting her claim, her claim of nationality, which is, goes to the heart of her asylum claim. Now, again, as we discussed, if this Court finds that it's not supported by substantial evidence, yes, the proper course is to remand it back, and the Court could include an instruction specifying a finding on nationality, but I don't think we need to go that far here. The other thing I'd like you to address, and I understand your argument, I'm not to interrupt, but the time is going down. We're dealing with an unusual country here, and if this were an Eastern European country at issue, there might be a difference. But here we have independent evidence that indicates that this is a common occurrence, that these fraudulent passports are obtained by Tibetan refugees and so forth, all of which corroborates what we're in this case. How do you deal with the uniqueness of Tibet and Nepal and refugees from Tibet who go through Nepal in this context? I'm not certain, Your Honor, that that, that it should be treated any differently than any other case. It's true that this is unique as far as the documentary evidence that's submitted regarding Tibet-Nepal, but we don't need to go that far here. Here, the Petitioner's finding that she is Tibetan, and here the immigration judge was very clear in that she didn't feel that she knew what to believe. And in addition, there's the issue of corroborating evidence, which could have been submitted from Petitioner's husband, despite the fact that he is in Nepal, and this Court has normally determined that that would not be easily obtainable. She testified on the record that she had called him on multiple occasions. I see my time has come. Thank you. Here, she could have submitted a statement from him, because he is truly the only one that knows that it's true she has independent corroborating evidence from individuals here in the United States who the IJ found that this evidence was subject to diminished weight because the individuals who wrote those letters were available for cross-examination, but were not made available to the Court. And in this case, the record supports the immigration judge's finding, and Petitioner has not met her burden of showing that the record compels a contradiction. Thank you, Your Honor. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Thomas